UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ERIC FONTENELLE                                          CIVIL ACTION

VERSUS                                                   NO. 21-388

DENISE NARCISSE                                          SECTION "J"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing § 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.[1]  For the following reasons, I recommend that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.  Alternatively, the claims are unexhausted and procedurally barred.

## I.    FACTUAL BACKGROUND

Petitioner Eric Fontenellle is a convicted inmate incarcerated in the Plaquemines Parish Detention Center in Point-A-La-Hache, Louisiana.[2]  Fontenelle was charged by a bill of information in Jefferson Parish with two counts of indecent behavior with a juvenile under age thirteen.[3]  Fontenelle pled not guilty on May 12, 2016.[4]  Fontenelle went to trial before a jury on

---

[1] A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence (*id.* § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. *Id.* § 2254(e)(2)(B).

[2] ECF No. 1, at 1.

[3] State Record Volume (hereinafter "St. R. Vol.") 1 of 7, at 2, Bill of Information, 5/4/16.

[4] *Id.* at 19, Min. Entry, 5/12/16.

August 9 - 11, 2016, and after the prosecution rested, Fontenelle pled guilty to the charges.[5]  The

Louisiana Fifth Circuit Court of Appeal summarized the established facts as follows:

> Because defendant's convictions were the result of guilty pleas, the facts underlying the crimes of which he was convicted are not fully developed in the record.  Nevertheless, the bill of information provides that on or about October 5, 2015, and on October 6, 2015, defendant violated La. R.S. 14:81 in that he, being over the age of seventeen, and there being an age difference of greater than two years between the two persons, did commit a lewd and lascivious act upon, or in the presence of, a known juvenile (D.O.B. 3/27/2008), wherein the victim was under the age of thirteen, with the intention of arousing or gratifying the sexual desires of either person.[6]

The trial court sentenced Fontenelle to ten years imprisonment as to each count to run concurrently,

with the first two years served without the benefit of parole, probation or suspension of sentence.[7]

On August 23, 2016, the trial court received a letter from Fontenelle in which he claimed

that he was under duress at the time he entered his guilty plea and his decision to plead guilty was

not rationally made.[8]  The trial court construed the letter as a motion to set aside the guilty plea

and denied it.[9]  The court found that Fontenelle had failed to establish that he was entitled to have

his guilty plea set aside as he was informed of the possible sentences he faced and that he was

informed, both in writing and in open court, of the constitutional rights that he waived in entering

a guilty plea.[10]

Fontenelle sought an appeal by letter dated August 29, 2016.[11]  The trial court granted an

---

[5] *Id.* at 24-25, Trial Mins., 8/9/16; *id.* at 26-27, Trial Mins., 8/10/16; *id*, at 31, Trial Mins., 8/11/16; *id*. at 32, Guilty Plea Mins. 8/11/16; *id.* at 34-35, Waiver of Constitutional Rights Plea of Guilty (Sex Offense), 8/11/16; St. R. Vol. 4 of 7 at 628-35, Motion Hearing Tr., 8/9/16; *id.*, at 636-84, Trial Tr., 8/10/16; St. R. Vol. 5 of 7, at 685-821, Trial Tr. (con't), 8/10/16; *id.*, at 822-33, Guilty Plea & Sentencing Tr., 8/11/16.

[6] *State v. Fontenelle*, 277 So. 3d 875, 878 (La. App. 5 Cir. 9/13/17); St. R. Vol. 5 of 7, at 917-18, 5th Cir. Opinion, 17-KA-103, 9/13/17.

[7] St. R. Vol. 1 of 7, at 32, Guilty Plea Mins., 8/11/16; *id.*, at 33, Uniform Commitment Order, 8/11/16; St. R. Vol. 5 of 7, at 822-33, Guilty Plea & Sentencing Tr., 8/11/16.

[8] St. R. Vol. 1 of 7, at 47-48, Letter construed as a Motion to Set Aside Guilty Plea, 8/23/16 (dated 8/12/16).

[9] *Id.* at 51, Order, 8/23/16.

[10] *Id.*

[11] St. R. Vol. 1 of 7, at 55-57, Letter Requesting an Appeal, 9/2/16 (dated 8/29/16).

appeal on September 6, 2016.[12]  On September 13, 2016, Fontenelle, through trial counsel, sought leave to withdraw his guilty plea, claiming that his plea was a product of duress as it appeared at the time that the probability of conviction at trial was overwhelming.[13]  On September 14, 2016, the trial court denied the motion on the basis that it had no jurisdiction in the mater as an appeal was pending.[14]

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, Fontenelle's appointed counsel asserted that he had thoroughly reviewed the trial court record and could not find any non-frivolous issues to raise on appeal;[15] therefore, he moved to withdraw as counsel pursuant to *Anders v. California*[16] and *State v. Jyles.*[17]  Fontenelle filed a *pro se* brief asserting that his counsel's ineffective assistance resulted in his guilty plea being constitutionally infirm.[18]

On September 13, 2017, the Louisiana Fifth Circuit affirmed Fontenelle's convictions and sentences and granted the motion to withdraw.[19]  The court concluded that there were no non-frivolous issues for appeal.[20]  The court also found that Fontenelle's claims of ineffective assistance of counsel did not meet the standard of *Strickland v. Washington*,[21] and that there was no conflict of interest that adversely affected counsel's performance.[22] On November 6, 2017, the

---

[12] *Id*. at 58, Order, 9/6/16.

[13] *Id*. at 60, Motion to Withdraw Plea of Guilty, 9/13/16.

[14] *Id*. at 117, Order, 9/14/16.

[15] St. R. Vol. 5 of 7, at 837-54, Appeal Brief, 17-KA-0103, 3/20/17; *id.* at 856-58, Motion to Withdraw as Attorney of Record, 3/16/17.

[16] 386 U.S. 738 (1967).

[17] 704 So. 2d 241 (La. 12/12/97) (per curiam).

[18] St. R. Vol. 5 of 7, at 881-911, Pro Se Appeal Brief, 17-KA-0103, 5/10/17.

[19] *State v. Fontenelle*, 227 So. 3d 875 (La. App. 5th Cir. 9/13/17); St. R. Vol. 5 of 7, at 914-32, 5th Cir. Opinion, 17-KA-103, 9/13/17.  The Fifth Circuit did remand the matter to the trial court to correct the commitment order.  *Id.*  On October 3, 2018, the state trial court corrected the commitment order as directed by the Louisiana Fifth Circuit.  St. R. Vol. 2 of 7, at 294, Sentencing Mins. 10/3/18; *id.* at 295, Uniform Sentencing Commitment Order, 10/3/18.

[20] *Id.* at 883; St. R. Vol. 5 of 7, at 926, 5th Cir. Opinion, 17-KA-103, 9/13/17.

[21] 466 U.S. 668 (1984).

[22] *Fontenelle*, 227 So. 3d at 884-86; St. R. Vol. 5 of 7, at 926-31, 5th Cir. Opinion, 17-KA-103, 9/13/17.

court denied Fontenelle's request for rehearing.[23]  Fontenelle did not file a writ application with the Louisiana Supreme Court.

On September 10, 2018, Fontenelle filed a counseled application for post-conviction relief asserting four claims:

(1) His conviction obtained by guilty plea was unlawfully induced and not made voluntarily;

(2) he was denied effective assistance of counsel in that (a) his trial counsel had a conflict of interest with him; (b) his counsel failed to conduct adequate pretrial investigation; (c) his counsel failed to object to prejudicial hearsay; (d) his counsel agreed to allow evidence of Fontenelle's prior criminal convictions and failed to impeach State witnesses; (e) his counsel failed to subject the prosecution's case to any meaningful adversarial review; (f) his counsel failed to object to the testimony of Nurse Ann Troy regarding children being coached or telling the truth; and (g) his counsel failed to consult with an expert on child-interview techniques in order to investigate and evaluate the interviews of N.G. conducted by law enforcement;

(3) Newly discovered evidence indicated that the alleged victim falsified her allegations against him; and

(4) Newly discovered evidence supported his claim of actual innocence of the crimes of which he was convicted.[24]

On June 10, 2019, the state trial court denied the application, finding that Fontenelle's first claim was fully litigated on direct appeal.[25]  The court found that Fontenelle had not met his burden of proof as to his ineffective assistance of counsel claims and that his guilty pleas precluded him from raising such claims on post-conviction relief.[26]  The court also found Fontenelle's claim of actual innocence were not cognizable on post-conviction review.[27]

On November 26, 2019, the Louisiana Fifth Circuit denied Fontenelle's October 7, 2019,

---

[23] St. R. Vol. 5 of 7, at 934, 5h Circuit Order, 17-KA-103, 11/6/17; *id.* at 912, Letter Requesting Reconsideration, 17 KA 103, 10/23/17 (postmarked 10/17/17).
[24] St. R. Vol. 2 of 7, at 205, Application for Post-Conviction Relief, 10/10/18.
[25] *Id.* at 319, Order, 6/10/19.
[26] *Id.* at 320.
[27] *Id.*

writ application.[28]  The court denied Fontenelle's request for rehearing without reasons.[29]  The Louisiana Supreme Court denied Fontenelle's related writ application on July 24, 2020, finding it to be untimely pursuant to La. S. Ct. R. X § 5.[30]  His application for reconsideration was denied on December 8, 2020.[31]

## II.    **FEDERAL HABEAS PETITION**

On February 2, 2021, Fontenelle filed a petition for federal habeas corpus relief styled under 28 U.S.C. § 2254 and challenged his current custody.[32]  Fontenelle asserts the following claims before the court:

(1)    His conviction was obtained by a plea of guilty which was unlawfully induced after a trial and not knowingly and voluntarily made;

(2)    Ineffective assistance of counsel in that trial counsel: (a) had a conflict of interest; (b) failed to investigate the case; (c) failed to impeach critical State's witnesses; (d) failed to object to prejudicial hearsay testimony; (e) failed to subject the prosecution's case to any meaningful adversarial testing; (f) failed to object to the testimony of Ann Troy regarding children being coached to tell the truth; and (g) failed to consult with an expert on child interview techniques in order to investigate and evaluate the interviews of the victim conducted by law enforcement;

(3)    Newly discovered evidence proves that the alleged victim falsified her allegations against him; and

(4)    Newly discovered evidence indicates that he is actually innocent of the crimes.[33]

---

[28] St. R. Vol. 6 of 7, at 957-59, 5th Cir. Order, 19-KH-496, 11/26/19; *id*. at 936-56, 5th Cir. Writ Application, 19-KH-496, 10/7/19.

[29] *Id*. at 970, 5th Cir. Order, 19-KH-496, 11/31/20; *id*. at 960-69, Letter Requesting Rehearing, 1/21/20 (postmarked 1/16/20).

[30] *Fontenelle v. Narcisse,* 305 So. 3d 863 (La. 12/8/20); St. R. Vol. 7 of 7, at 1160, La. Sup. Ct. Order, 2020-KH-00318, 7/24/20; *id*. at 972-80*,* La. Sup. Ct. Writ Application, 20 KH 318, 1/28/20 (postmarked 1/27/20); *id*. at 982-1148, Supplement to Writ Application, 20 KH 318, 3/11/20 (dated 2/28/20).

[31] St. R. Vol. 7 of 7, at 1161, La. S. Ct. Order, 2020-KH-00318, 12/8/20; *id*. at 1150-56, Letter Request for Reconsideration, 8/6/20; Letter Supplement, 9/7/20.

[32] ECF No. 1.

[33] *Id*. at 5, 7, 8, 10; ECF 1-1, at 4-5.

In its opposition to Fontenelle's petition, the State asserts that the petition was not timely filed.[34] Fontenelle did not file a reply to the State's opposition.

## III.    LAW AND ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996,[35] and applies to habeas petitions filed after that date.[36]  Fontenelle's petition is deemed filed on February 2, 2021.[37]

### A.    Preliminary Considerations

The two threshold questions in habeas review under the amended statute are (1) whether the petition is timely and (2) whether petitioner's claims were adjudicated on the merits in state court.  In other words, has the petitioner exhausted state court remedies and is the petitioner in "procedural default" on a claim.[38]  The State claims that Fontenelle failed to exhaust all of his claims in that he did not give the Louisiana Supreme Court a fair opportunity to adjudicate them.[39] The State further asserts that the claims are procedurally defaulted as "technically exhausted" as the time for seeking review of the claims has long since elapsed and any further attempt to exhaust

---

[34] ECF No. 5.

[35] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

[36] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

[37] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Fontenelle dated his petition February 2, 2021. ECF No. 1-1, at 6.  However, the corresponding envelope is postmarked February 20, 2021.  *Id.*, at 1-2, p. 109.  Allowing Fontenelle the greatest possible benefit, as did the State, I utilize February 2, 2021 as the filing date.

[38] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

[39] ECF No. 5, at 14.

the claims would be found to be successive.[40]   The State also claims that Fontenelle's federal habeas petition was not timely filed because it was not filed within one year after finality of his conviction.[41]

For the reasons that follow, the State's limitations defense is supported by the record. Fontenelle's petition was not timely filed under the AEDPA, and therefore, it should be dismissed with prejudice as time-barred.  Alternatively, the claims are unexhausted and procedurally barred.

**B.**     **AEDPA Statute of Limitations**

The AEDPA requires that a § 2254 petition must ordinarily be filed within one year of the date the conviction became final.[42]   Fontenelle's conviction was final on December 7, 2017, when his time to seek writs with the Louisiana Supreme Court expired 30 day after the Louisiana Fifth Circuit's November 6, 2017, order denying his request for rehearing on his state court direct appeal.  Applying § 2244 literally, Fontenelle had one year from finality of his conviction, or until

---

[40] *Id.* at 14-15.

[41] *Id.* at 4-7.

[42] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001).  The statute of limitations provision of the AEDPA in 28 U.S.C. § 2244(d) provides for other triggers:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
> A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
> C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Sections (d)(1)(B) and (C) do not apply here.  Application of subsection (d)(1)(D) is addressed.

December 7, 2018, to file his federal habeas corpus petition.  Fontenelle did not file his federal habeas corpus petition within this one-year period.

In an abundance of caution, and because Fontenelle claims he discovered "new evidence" demonstrating that he is factually innocent, I have considered Fontenelle's entitlement to a delayed commencement based on "the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence," under 28 U.S.C. § 2244(d)(1)(D).  This subsection does not delay the commencement of the limitations period until the date on which the factual predicate of a claim was in fact discovered or developed; rather, it delays commencement only until the date on which it "could have been discovered through the exercise of due diligence."[43]

Fontenelle contends that the factual basis for two of his claims (i.e., the victim lied during her trial testimony) was unknown to him until an unspecified date in early 2018.[44]  While the State argues that the commencement date under this subsection would be by the time Fontenelle filed his post-conviction application on September 10, 2018, Fontenelle conceded in his post-conviction application that the victim's family members made his post-conviction counsel aware of N.G.'s

---

[43] 28 U.S.C. § 2244(d)(1)(D); *see Manning v. Epps*, 688 F.3d 177, 189-90 (5th Cir, 2012) (argument that § 2244(d)(1)(D) runs from actual discovery of claim is an "untenable theory."); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) ("the time commences when the factual predicate 'could have been discovered through the exercise of due diligence,' not when it was actually discovered by a given prisoner ... [and] not when the prisoner recognizes their legal significance.").  The United States Fifth Circuit has held "that this means the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim."  *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015) (citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998)); *see also Hunter v. Cain*, 478 F. App'x 852 (5th Cir. 2012) (citing *Starns v. Andrews*, 524 F.3d 612, 620–21 & n. 5 (5th Cir. 2008) (holding that the relevant date under § 2244(d)(1)(D) is the date that the habeas petitioner or his criminal attorney received the information in question) ).

[44] Fontenelle has not demonstrated that the factual basis for his claim that his guilty plea was not knowingly and voluntarily made or his claims of ineffective assistance of counsel were not previously known to him. Rather, they were known to him at the time he entered his guilty plea.

recantation in "early 2018," and that afterward an investigator was retained.[45]  The limitations period would thus run not from the date Fontenelle filed his application for post-conviction relief, but rather the date on which he could have discovered the victim's alleged lies through the exercise of due diligence.

While no specific date can be determined as to when Fontenelle or his attorney *first* learned of the victim's recantation, certainly the information was discoverable by May 9, 2018, when the victim gave a transcribed statement recanting her previous statements and trial testimony.[46]  Applying § 2244(d)(1)(D) literally, Fontenelle had one year from May 9, 2018, or until May 9, 2019, to file his federal habeas corpus petition.  Fontenelle did not file his federal habeas corpus petition within this one-year period.  Even if the date commenced were the later September 10, 2018 filing date of Fontenelle's post-conviction application, Fontenelle's petition would still be untimely.  In that case, he would have had until September 10, 2019 to file his federal habeas corpus petition.

Using any of these delayed dates, Fontenelle's February 2, 2021 federal habeas corpus petition is still untimely.  Accordingly, his petition must be dismissed as untimely, unless the one-year statute of limitations was interrupted or otherwise tolled under one of the following two ways recognized in the applicable law.

### 1.  Statutory Tolling

The AEDPA provides for suspension of its one-year limitations period:  "The time during which a *properly filed application for State post-conviction or other collateral review* with respect

---

[45] St. R. Vol. 2 of 7, at 225, Application for Post-Conviction Relief, 10/10/18.
[46] St. R. Vol. 2 of 7, at 245-93, Sworn Statement of N.G., 5/9/18.

to the pertinent judgment or claim is pending *shall not be counted* toward any period of limitation under this subsection."[47]  The Supreme Court has described this provision as a tolling statute.[48]

By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings.[49]  Rather, as the United States Fifth Circuit and other federal courts have held, because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period.  Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.[50]

For a post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing.[51]  The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings filed *pro se* by a prisoner.[52]  I have applied that rule where necessary to petitioner's state court pleadings delineated in the procedural history.

---

[47] 28 U.S.C. § 2244(d)(2) (emphasis added).

[48] *Duncan*, 533 U.S. at 175-78.

[49] *Flanagan*, 154 F.3d at 199 n.1.

[50] *Id.*; *Brisbane v. Beshears*, 161 F.3d 1, 1998 WL 609926, at *1 (4th Cir. Aug. 27, 1998); *Gray v. Waters*, 26 F. Supp. 2d 771, 771-72 (D. Md. 1998).

[51] *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); *Williams v. Cain*, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999)); *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000).

[52] *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"[53] The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.[54] A "pertinent judgment or claim" requires that the state court filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims being raised in the federal habeas corpus petition.[55]

As calculated in the first manner above, Fontenelle's conviction was final under federal law on December 7, 2017, which was 30 days after the Louisiana Fifth Circuit denied his application for rehearing following direct appeal and he did not file a writ application with the Louisiana Supreme Court. The AEDPA limitations period began to run the next day, December 8, 2017, and continued without interruption for 278 days until Fontenelle filed his counsel application for post-conviction relief in the state district court.

Statutory tolling then began when Fontenelle filed his application for post-conviction relief on September 10, 2018. Statutory tolling continued during the time his "properly filed" application remained "pending" in the state district court, that is, until relief was denied on June 10, 2019. Thereafter, state post-conviction proceedings remained "pending" before the Louisiana Fifth Circuit when Fontenelle properly filed his writ application which was denied on November 26, 2019. While Fontenelle filed a request for rehearing which was denied on January 31, 2020, his

---

[53] *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for § 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

[54] *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, No. 99-3364, 2001 WL 995164, at *5 (3d Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").

[55] *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

application was not authorized pursuant to Louisiana Uniform Court of Appeals Rules 4-9[56] and 2-18.7[57] and did not toll the 30 day time frame in which to seek writs with the Louisiana Supreme Court pursuant to La. S. Ct. R. X § 5.[58]  His application for rehearing which was not authorized did not toll the limitations period.[59]

Thus, Fontenelle's limitations began to run again on December 27, 2019, when he did not timely file a writ application to the Louisiana Supreme Court.[60]  At that point, he had eighty-seven (87) days remaining.  Fontenelle's untimely writ application to the Louisiana Supreme Court also did not toll the limitations period as it was not "properly filed," and therefore was not pending as post-conviction review for the purposes of the AEDPA's statute of limitations and tolling doctrines.[61]  The AEDPA time limitation thus expired on March 23, 2020.

---

[56] Uniform Rule 4-9 provides that "Rules 2-18.1 through 2-18.7 apply to requests for rehearing related to writ applications." LA. APP. R. 4-9.

[57] Uniform Rule 2–18.7 provides in pertinent part: "An application for rehearing will be considered in cases where the court has: (A) Granted a writ application on the merits; (B) Dismissed an appeal; or (C) Ruled on the merits of an appeal."  LA. APP. R. 2–18.7.

[58] Louisiana Supreme Court Rule X § 5(a) provides in pertinent part that a writ application after a court has denied an application "shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal; however, if a timely application for rehearing has been filed in the court of appeal in those instances where a rehearing is allowed, the application shall be made within thirty days of the mailing of the notice of denial of rehearing or the judgment on rehearing.  No extension of time therefor will be granted."

[59] *Gaudet v. Cain*, 31 F. App'x 835, 2002 WL 243278, at *1 (5th Cir. Jan. 18, 2002) (per curiam) (application for rehearing did not toll the AEDPA time limitations period) (citing La S. Ct. R. X, § 5(a), LA. APP. R. 2-18.7 and *Y.F.B. v. R.D.R.*, 787 So. 2d 276 (La. 4/12/101)); *Romero v. Cain*, No. 6:14-cv-1164, at *4-5 (W.D. La. Jan. 16, 2015) (application for rehearing related to writ application filed with the State Court of Appeals was not "properly filed" and did not toll the AEPDA time limitation).

[60] *Romero*, 2015 WL 237166, at *5 ("Statutory tolling under § 2244(d)(2) ceased, at the latest, on July 27, 2013 when petitioner failed to meet the Rule X, § 5(a) thirty-day deadline to seek the next level of post-conviction review in a proper and timely fashion, which rendered his application no longer 'pending.' ") (citation omitted).

[61] *Williams v. Cain*, 217 F.3d 303, 309-11 (5th Cir. 2000) (writ application that failed to comply with Rule X § 5 was not "properly filed" and did not toll the time limitation); *accord Boston v. Stinson*, No. 16-3643, 2016 WL 7735222, at *6 (E.D. La. Oct. 26, 2016), *R.& R. adopted*, 2017 WL 117893 (E.D. La. Jan. 11, 2017); *see also Jenkins v. Cooper*, No. 07-0216, 2009 WL 1870874, *5 (E.D. La. June 26, 2009) (holding that a petitioner does not benefit from any statutory tolling for an untimely writ application filed in the Louisiana Supreme Court because "[a] writ application which fails to comply with La. S.Ct. Rule X 5(a) is not properly filed because it is untimely, and it is not pending post-conviction review for purposes of the ...

Fontenelle's federal petition is deemed filed on February 2, 2021, under the applicable mailbox rule. This was three-hundred and sixteen (316) days after the AEDPA one-year filing period expired on March 23, 2020.

Alternatively, considering May 7, 2018, as the date on which "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," Fontenelle allowed one hundred twenty-four (124) days to pass from the date of the victim's transcribed statement until the time began to toll on September 10, 2018, when he filed his application for post-conviction relief. The time limitation started to run again on December 27, 2019, when Fontenelle did not file a timely writ application with the Louisiana Supreme Court. Another four-hundred and four (404) days passed before Fontenelle filed his petition for habeas corpus on February 2, 2021. Fontenelle filed his application one-hundred and sixty-three (163) days late assuming this delayed commencement date under § 2244(d)(1)(D).

Even if the September 10, 2018 filing date of Fontenelle's post-conviction application is considered as the delayed commencement date of the statute of limitations, as suggested by the State, Fontenelle's federal application would still be untimely. Using that date, despite the fact that N.G.'s statement was taken four months earlier by Fontenelle's then-counsel, the limitation period would begin to run on December 27, 2019. When Fontenelle filed his petition for habeas corpus on February 2, 2021, four-hundred and four (404) days had passed. Thus, Fontenelle's petition was thirty-nine (39) days late even under this latest possible date.

Accordingly, Fontenelle's federal petition was *not* timely filed and must be dismissed with prejudice for that reason.

---

statute of limitations and tolling doctrines").

## 2.  No Equitable Tolling Warranted

The United States Supreme Court has held that AEDPA's one-year statute of limitations period in § 2244(d)(1) may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist that prevented timely filing.[62]  Equitable tolling is warranted only in situations during which a petitioner was actively misled or prevented in some extraordinary way from asserting his rights.[63]  A petitioner bears the burden of proof to establish entitlement to equitable tolling.[64]

Fontenelle does not directly address equitable tolling in his petition.  His equity arguments seek to excuse or explain certain untimely state court filings.  However, the purpose of the federal equitable tolling doctrine relates to the suspension of the federal limitations period under the AEDPA, not state law filing deadlines for state court pleadings.[65]  Nevertheless, to the extent that Fontenelle's pleas to excuse his tardiness in state court filings similarly led to his tardiness in federal court, he has not established a basis for granting the extraordinary remedy of equitable tolling of the AEDPA's one-year filing period.

Fontenelle claims that he did not receive the Louisiana Fifth Circuit opinion of September 13, 2017, denying his direct appeal until October 3, 2017, due to the fact that he was transferred "within different facilities housing."[66]  Fontenelle, however, does not explain how the delay in receiving the opinion prevented him from timely filing his federal petition.  Rather, it had no effect. When Fontenelle received notice of the denial, the time to seek both state post-conviction relief and federal habeas corpus relief in a timely manner had not even begun to run.  Fontenelle

---

[62] *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998).
[63] *Pace*, 544 U.S. at 418-19; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).
[64] *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).
[65] *See Pace*, 544 U.S. at 419; *Davis*, 158 F.3d at 811
[66] ECF No. 1-1, at 18.

requested rehearing, which was denied, and, as previously explained, his conviction did not become final until December 7, 2017, when he did not file a writ application with the Louisiana Supreme Court. While he claims that his counsel appointed to represent him on direct appeal would not file a brief with the Louisiana Supreme Court,[67] he had no right to counsel beyond the initial appellate level.[68] Further, a prisoner's *pro se* status does not constitute rare and exceptional circumstances warranting equitable tolling.[69]

Fontenelle also claims that the prison failed, on two separate occasions, to send the proper attachments to his writ application to the Louisiana Fifth Circuit from August 1, 2019, until October 1, 2019.[70] He further claims the Louisiana Fifth Circuit denial of his writ application on November 26, 2019, was mailed to the wrong address and that he did not receive the denial until December 30, 2019, after it was mailed to the correct address on December 26, 2019.[71] His request for rehearing filed thereafter on January 13, 2020, was denied January 31, 2020. After his February 27, 2020, writ application to the Louisiana Supreme Court was denied as untimely filed, he filed for rehearing and provided a copy of the Notice of Disposition Certificate of Delivery in an attempt to show the date on which he received a copy of the Louisiana Fifth Circuit order. The Louisiana Supreme Court denied rehearing on December 8, 2020.

---

[67] *Id.*

[68] *See Ross v. Moffitt*, 417 U.S. 600, 614 (1974); *Clark v. Johnson*, 227 F.3d 273, 283 (5th Cir. 2000) ("[T]he Supreme Court has not extended the right of counsel to discretionary review."); *State v. Thomas*, 750 So. 2d 1114, 1127 (La. Ct. App. 4th Cir. 1999) (defendant has "a right to court appointed counsel on a first direct appeal as of right"); *see also* LA. CODE CRIM. PROC. art 912.1(B)(1) (providing right of appeal to court of appeal in criminal cases).

[69] *See, e.g.*, *United States v. Petty*, 530 F.3d 361, 365 (5th Cir. 2008) ("Proceeding pro se is alone insufficient to equitably toll the AEDPA statute of limitations."); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000) ("[P]roceeding pro se is not a 'rare and exceptional' circumstance [warranting equitable tolling] because it is typical of those bringing a § 2254 claim."); *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999) ("[N]either a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling.").

[70] ECF No. 1-1, at 19.

[71] *Id.*

While his contention that he did not receive the Louisiana Fifth Circuit rulings in a timely fashion may be unusual, "[w]hat a petitioner did both before and after the extraordinary circumstances that prevented him from timely filing may indicate whether he was diligent overall."[72]  As noted, he must also establish that he pursued his rights *diligently*, because "[e]quity is not intended for those who sleep on their rights."[73]

The Fifth Circuit recognizes that "equitable tolling" by its definition suspends the limitations period when, "despite diligent efforts," the petitioner "did not discover the injury until *after the limitations* period had expired."[74]  Regarding the diligence requirement, a petitioner need not show that he exercised the "maximum feasible diligence"; rather, "[t]he diligence required for equitable tolling purposes is reasonable diligence."[75]  Nonetheless, I cannot say that Fontenelle exercised even reasonable diligence in this case for the following reasons.

Fontenelle did not seek post-conviction relief in the state courts with diligence and alacrity. On the contrary, although his state criminal judgment became final for AEDPA purposes on December 7, 2017, and Fontenelle expressed in March 2017, that he intended to challenge his conviction via a collateral attack,[76] he nevertheless waited until September 10, 2018, to seek post-conviction relief in the state courts – in other words, he allowed more than nine months (or approximately 75% of his one-year federal limitations period) to elapse before he even began seeking such relief.  In this Circuit, similar delays in seeking post-conviction relief have been considered indicative of a lack of diligence for equitable tolling purposes.[77]

---

[72] *Jackson v. Davis*, 933 F.3d 408, 411 (5th Cir. 2019).

[73] *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010) (quotation marks omitted).

[74] (emphasis in original) *Umana v. Davis*, 791 F. App'x 441 (5th Cir. 2019) (quoting BLACK'S LAW DICTIONARY (11th ed. 2019)).

[75] *Holland v. Florida*, 560 U.S. 631, 653 (2010) (quotation marks omitted).

[76] St. R. Vol. 2 of 7, at 150-51, Motion for Production of Documents, 3/29/17 (dated 3/23/17).

[77] *See Schmitt v. Zeller*, 354 F. App'x 950, 951-52 (5th Cir. 2009) ("[Petitioner] delayed approximately ten months after his conviction was final before applying for state habeas relief.... [Petitioner]'s filing the state

Furthermore, the delayed receipt of the notice of the denial of his writ application by the Louisiana Fifth Circuit did not *prevent* Fontenelle from filing a writ application with the Louisiana Supreme Court. After receiving notice of the denial on December 30, 2019, rather than file a writ application with the Louisiana Supreme Court, he chose to file an unauthorized request for rehearing. After he received notice of the denial of his writ application by the Louisiana Supreme Court, rather than filing his petition for habeas corpus, he instead filed an unauthorized request for reconsideration. He then waited one hundred and ninety-three (193) days after the Louisiana Supreme Court denied his writ application to file his federal habeas corpus petition. In short, the brief delay in receiving notification of the denial of his writ application by the Louisiana Fifth Circuit was not casually related to his untimely federal petition for habeas corpus. Fontenelle did not discover the injury after the federal limitations period had expired, nor was he prevented in some extraordinary way from asserting his rights. Rather, Fontenelle's own failure to follow the state procedural rules led to his untimely federal petition.

Fontenelle's belated discovery of the victim's recantation also does not warrant equitable tolling because it in no way prevented him from timely seeking federal relief under § 2244(d)(1)(D). Although he was required to exhaust his state court remedies with respect to any claims founded on his "new evidence,"[78] he nevertheless still could have filed for federal relief within one year of his discovery of the recantation simply "by filing a 'protective' petition in

---

petition after squandering most of the year available under Section 2244 is a factor in deciding whether equitable tolling should be allowed for problems that arise in later filing the federal petition."); *Nelms v. Johnson*, No. 01-10696, 2002 WL 31319277, at *1 (5th Cir. Sept. 30, 2002) ("This court has found no case in which equitable tolling was granted after a petitioner had let ten months of the AEDPA limitations period slip by."); *Williams v. Vannoy*, No. 17-13281, 2019 WL 2469682, at *3 (E.D. La. Jun. 13, 2019) (petitioner was not entitled to equitable tolling for state's delay in notifying him of denial of writs when he did not exercise diligence initially when he waited nearly eleven months to file his initial application for post-conviction relief), *appeal filed*, No. 19-30523 (5th Cir. Jun. 27, 2019).

[78] *See* 28 U.S.C. § 2254(b)(1).

federal court and asking the federal court to stay the federal habeas proceeding until state remedies are exhausted."[79]  He did not avail himself of that option, and the United States Fifth Circuit Court of Appeals has stated that where a petitioner "could have elected to file a protective federal petition and request a stay, we hold that he was not *prevented* from asserting his rights, and that *equitable tolling does not apply*."[80]

In addition, the fact that Fontenelle has asserted ineffective assistance of trial counsel claims does not excuse his untimely federal filing.  The United States Supreme Court's holdings in *Martinez v. Ryan*,[81] and *Trevino v. Thaler,*[82] and their progeny, simply do not provide a basis for review of Fontenelle's untimely filed federal petition.  In *Martinez v. Ryan*, the Court held that a state-imposed "'*procedural default* will not bar a federal habeas court form hearing a substantial claim of ineffective assistance of counsel at *trial* if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'"[83]  In this case, however, the bar at issue in this federal court arises from Fontenelle's failure to meet the federal limitations deadline under the AEDPA.  Neither *Martinez* nor *Trevino* addresses or excuses the untimely filing of a federal habeas petition.[84]

Fontenelle has asserted no reason that might constitute rare or exceptional circumstances to equitably toll the one-year statute of limitations period in his case, and I can find none.  The

---

[79] *Pace*, 544 U.S. at 416.

[80] *Madden v. Thaler*, 521 F. App'x 316, 323 (5th Cir. 2013) (emphasis added).

[81] 566 U.S. 1 (2012).

[82] 569 U.S. 413 (2013).

[83] *Trevino*, 569 U.S. at 417 (quoting *Martinez*, 566 U.S. at 17) (emphasis added).

[84] *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report).  As already discussed, these cases also do not constitute new rules of constitutional law made retroactive on collateral review to start a new one-year filing period under the AEDPA.  *See In re Paredes*, 587 F. App'x 805, 813 5th Cir. 2014); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012).

record in this case does not establish any circumstances that might fit the restrictive boundaries of "exceptional circumstances" found by the Fifth Circuit to warrant equitable tolling.[85]  Fontenelle, therefore, is not entitled to equitable tolling of the one-year AEDPA filing period.

### 3. Actual Innocence

Fontenelle does not expressly argue "actual innocence" under *McQuiggin v. Perkins*[86] to overcome the one-year statute of limitations imposed by the AEDPA.  In *McQuiggin*, the Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations."[87]  The Court allows this exception to prevent a "fundamental miscarriage of justice."[88]  However, the Court cautioned that "tenable actual innocence gateways are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"[89]

---

[85] *See Holland v. Florida*, 560 U.S. 631, 651-54 (2010) (equitable tolling warranted where attorney was grossly negligent and failed to meet professional standards of care when he ignored client's requests to timely file a federal petition and failed for years to respond to client's letters or communicate with client); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling warranted for significant state-created delay when, for almost one year, state appeals court failed in its duty under Texas law to inform petitioner that his state habeas petition had been denied despite his persistent requests, and petitioner diligently pursued federal habeas relief); *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (tolling *not* justified during petitioner's 17-days in psychiatric ward where he was confined, medicated, separated from his glasses and rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did *not* justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court thrice extended deadline to file habeas corpus petition beyond expiration of the AEDPA grace period).

[86] 569 U.S. 383 (2013).

[87] *Id.* at 386.

[88] *Id.* at 392.

[89] *Id.* at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

Although the Supreme Court has not explicitly addressed the interplay between a guilty plea and the actual innocence exception to a procedural bar on habeas review, in *Bousley v. United States*,[90] the Court allowed a petitioner who pled guilty to assert a claim of actual innocence. Appellate courts, including the Fifth Circuit, have cited *Bousley* to support the notion that a defendant who pled guilty may still invoke the actual innocence exception to overcome a procedural default,[91] though the guilty plea "seriously undermines" that claim.[92]   Accordingly, despite his guilty plea, Fontenelle may rely on the actual innocence exception to overcome the procedural bar.

When entering his unconditional guilty pleas, Fontenelle conceded under oath that he in fact committed and was guilty of the crimes of which he stands convicted.   The United States Supreme Court has explained: "To be credible, [an actual innocence] claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.   Because such evidence is obviously unavailable in the vast majority

---

[90] *Bousley v. United States*, 523 U.S. 614, 118 S. Ct. 1604, 140 L.Ed.2d 828 (1998) (remanding the case to permit petitioner an opportunity to make a showing of actual innocence under *Schlup* standard for purposes of excusing a procedural bar to review of his guilty-plea conviction).

[91] *United States v. Hisey*, No. 20-3106, 2021 WL 4163499, at *2 (10th Cir. Sept. 14, 2021) (citing *Bousley* for proposition that defendant who pled guilty may overcome procedural default by showing actual innocence); *United States v. Torres*, 163 F.3d 909, 912 (5th Cir. 1999) (Wisdom, J.) (applying actual innocence to claim by defendant who pled guilty); id. at 914 (Dennis, J., concurring) (citing *Bousley* as first case in which the Court recognized the possibility of applying actual innocence exception to a defendant on habeas after a guilty plea).

[92] *Chestang v. Sisto*, 522 F. App'x 389, 390 (9th Cir. 2013); *Diamond v. Clarke*, No. 7:18-cv-00580, 2019 WL 4546918, at *4 (W.D. Va. Sep. 19, 2019) (finding it "even more difficult" to show actual innocence when a petitioner pled guilty); *Smith v. Warden*, 7:17CV00072, 2018 WL 3130948, at *2 (W.D. Va. Jun. 26, 2018) (citations omitted); *Robinson v. Ryan*, CIV 11–1383–PHX–GMS (MHB), 2012 WL 1752995 at *5 (D. Ariz. May 16, 2012) ("Where, as in this case, Petitioner pled guilty, such admission of culpability mitigates strongly against a subsequent finding of actual innocence"), *R.&R. adopted*, 2012 WL 2092089 (D. Ariz. Jun. 11, 2012).

of cases, claims of actual innocence are rarely successful."[93]  In fact, "in virtually every case, the allegation of actual innocence has been summarily rejected."[94]

At trial, prior to the entry of Fontenelle's guilty plea, the State presented the testimony of multiple witnesses to whom N.G.[95] made statements.  Michael Brennan, N.G.'s mother's boyfriend of seven years, testified that he, A.C., C.C., Fontenelle, and N.G. lived together at the time of the crimes.[96]  He explained that Fontenelle and C.C., N.G.'s grandmother, were married.[97]  Brennan explained that about two weeks before the crimes, N.G. told him and A.C. that Fontenelle had told her about sex.[98]  Then, on October 9, 2015, after Brennan brought N.G. home from school, he found her in her room naked.[99]  Brennan realized that something was wrong and, after N.G. dressed, he asked her questions to try to determine if something had happened.[100]  Eventually N.G. told Brennan that Fontenelle had entered her room two nights prior and had touched her and told her that he would spank her if she told anyone.[101]  Brennan called A.C., N.G.'s mother, and they met at a park where N.G. told her what had happened.[102]  When they returned to the house, they called 911 and a female deputy arrived.[103]  The deputy questioned N.G. in her bedroom.[104]

---

[93] *Schlup*, 513 U.S. at 324.

[94] *Calderon v.Thompson*, 523 U.S. 538, 559, 118 S. Ct. 1489, 1503, 140 L.Ed.2d 728 (1998) (citation omitted).

[95] Pursuant to LA. REV. STAT. § 46:1844(W)(1)(a), I refer to the victim and family members by their initials because of the sex crimes charged in the indictment.

[96] St. R. Vol. 4-5 of 7, at 684-86, Trial Tr., 8/10/16.

[97] St. R. Vol. 5 of 7, at 685, Trial Tr. (con't), 8/10/16

[98] *Id.* at 692.

[99] *Id.* at 687-88.

[100] *Id.* at 688-89.

[101] *Id.* at 689-91.

[102] *Id.* at 690, 693.

[103] *Id.* at 693.

[104] *Id.* at 693-94.

Detective Tillman arrived later and, after privately questioning N.G., told them to take N.G. to the hospital for a rape kit.[105]

Brennan accompanied A.C. and N.G. when they went to the hospital and later when they went to the Children's Advocacy Center.[106]  Brennan denied coaching N.G. and denied that they had falsified the allegations to have Fontenelle forcibly removed from the home.[107]  He testified that, since N.G.'s disclosure, they had attempted to keep C.C. away from N.G. as she had told N.G. to say that it was C.C. who had gone in her room and had put her blanket on her.[108]  Brennan explained that since the incident N.G. had become scared of everyone and her grades fell.[109]

A.C. testified that Michael Brennan called her at work and told her that she needed to come home right away.[110]  They met at a park and N.G. told her that Fontenelle had toucher from the belly button down.[111]  They called 911 later that evening and the call was played for the jury.[112]  A.C. explained that, before the crimes, N.G. was an honor roll student and afterward she started earning failing grades.[113]  A.C. admitted that her mother, C.C., did not believe N.G., and that several times C.C. told N.G. to say that C.C. had gone into her room to pull up N.G.'s covers.[114]  A.C. explained that N.G. "shuts down" when asked about the incidents.[115]  She recalled that N.G. told them that Fontenelle told her about sex.[116]  She further recalled that, before N.G.'s disclosure,

---

[105] *Id.* at 694.
[106] *Id.* at 694-95.
[107] *Id.* at 695.
[108] *Id.* at 700-01.
[109] *Id.* at 702.
[110] *Id.* at 720-21.
[111] *Id.* at 721.
[112] *Id.* at 730-32.
[113] *Id.* at 726.
[114] *Id.* at 728.
[115] *Id.* at 731.
[116] *Id.* at 733.

N.G. stopped referring to Fontenelle as "Paw Paw" and had kept her distance from him.[117]  She denied coaching N.G. in what to say.[118]

 Deputy Kristin Lotz of the Jefferson Parish Sheriff's Office testified that she responded to a call on October 10, 2015, that a child was being touched inappropriately by a family member.[119]  When she arrived, she asked A.C. if she could speak with N.G. privately.[120]  Deputy Lotz spoke to N.G., who was very shy, in her bedroom, and it took some time for N.G. to become comfortable.[121]  N.G. told Lotz that her step-grandfather had come into her room and touched her inappropriately four days earlier, and she used hand gestures to demonstrate where on her body it happened.[122]  N.G. told Lotz that it happened twice and that the first time she pretended to sleep and then she moved around and he ran out of the room.[123]  After the second time, N.G. confronted him and Fontenelle grabbed her by the collar and told her that he would spank her if she told anyone.[124]  N.G. could not recall the specific time of night but recalled it was night time.[125]  Lotz called Detective Tillman who arrived on the scene later and she briefed him about what happened.[126]  Lotz returned to the residence later and arrested Fontenelle after a second 911 call reported that Fontenelle was at the residence.[127]

 Detective Tillman of the Jefferson Parish Sheriff's Office testified that upon arrival at the

---

[117] *Id.* at 739.

[118] *Id.* at 732.

[119] St. R. Vol. 4 of 7, at 652, Trial Tr., 8/9/16.

[120] *Id.* at 653-54.

[121] *Id.* at 654.

[122] *Id.* at 655-56.

[123] *Id.* at 655.

[124] *Id.* at 656.

[125] *Id.* at 662.

[126] *Id.* at 657.

[127] *Id.* at 658-59.

residence, Deputy Lotz apprised him of her investigation.[128]  Tillman spoke to A.C. and her boyfriend outside of N.G.'s presence.[129]  He then conducted an interview of N.G. in her bedroom.[130]  N.G. told him that her "Paw Paw" had touched her on her chest and in her vaginal area a few days earlier, two nights in a row.[131]  The first time she was afraid and pretended to be asleep.[132]  The second time she was laying on her stomach and Fontenelle rolled her over and touched her, and Fontenelle fled the room when N.G. sat up.[133]  She told Fontenelle that she was uncomfortable with him touching her, and he told her he would spank her if she told anyone.[134] Tillman testified that N.G. seemed like she did not want to get Fontenelle in trouble but that she wanted the behavior to stop.[135]  She told him that Fontenelle had previously had a conversation with her about sex.[136]  Tillman determined that he had probable cause for an arrest.  He wrote an application for an arrest warrant and supporting affidavit and applied for the warrant shortly after midnight on October 10, 2015.[137]

Tillman's shift ended, but he returned to the bureau after Deputy Lotz contacted him and advised that she had arrested Fontenelle.[138]  After advising Fontenelle of his rights, Fontenelle executed a rights of arrestee form and gave a videotaped statement which was played for the jury.[139]  Tillman testified that he did not believe Fontenelle.[140]  He testified that he had investigated

---

[128] St. R. Vol. 5 of 7, at 752-53, Trial Tr. (con't), 8/10/16.
[129] *Id.* at 753.
[130] *Id.*
[131] *Id.* at 754.
[132] *Id.* at 754-55, 768.
[133] *Id.*
[134] *Id.* at 755.
[135] *Id.* at 768.
[136] *Id.* at 754.
[137] *Id.* at 756.
[138] *Id.* at 757.
[139] *Id.* at 757-761.
[140] *Id.* at 763-64.

dozens of child sexual assault cases and that the information N.G. told him was consistent with grooming behavior.[141]  He testified that he had dealt with children who had been coached and that N.G. was appropriate and he did not believe that her parents had enough knowledge to coach her.[142]  Tillman admitted, however, that he had no training in child psychology.[143]

Brittney Bergeron, a forensic interviewer assigned to the Jefferson Children's Advocacy Center, conducted a recorded forensic interview of N.G. on October 20, 2015, which was played for the jury.[144]  Bergeron explained that the parents waited in a separate room during the interview and did not monitor the interview.[145]

N.G., who was eight years old at the time of trial, testified that Fontenelle came into her room two nights and touched her from the belly button down to a private part of her body in October 2015.[146]  Initially, she did not tell anyone because Fontenelle threatened to "whip" her.[147]  Michael Brennan was the first person she told about the incidents.[148]

Anne Troy, a family nurse practitioner at the Audrey Hepburn Care Center, was accepted as an expert in the field of child maltreatment and child sexual abuse.[149]  Nurse Troy examined N.G. and recorded her incident history on October 23, 2015.[150]  The audio of the incident history was played for the jury.[151]  Troy did not see any signs of coaching when she interviewed N.G..[152]

---

[141] *Id.* at 764.
[142] *Id.* at 768.
[143] *Id.* at 770.
[144] St. R. Vol. 4 of 7, at 667, 669, 671-72, Trial Tr, 8/10/16.
[145] *Id.* at 670-71
[146] St. R. Vol. 5 of 7, at 773, 776-81.
[147] *Id.* at 782.
[148] *Id.* at 776-78, 782-84.
[149] *Id.* at 785-89.
[150] *Id.* at 789-96.
[151] *Id.* at 796-98.
[152] *Id.* at 800-01.

She found N.G. to be consistent with the history that was provided in the emergency room.[153]  N.G. recalled the clothing she was wearing, that Fontenelle sat on her bed, and demonstrated how she went in the fetal position to protect herself the second time.[154]  Troy's diagnosis was child sexual abuse, and she testified that she absolutely recommended that N.G. seek counseling.[155]

As evidence of his actual innocence, Fontenelle submits N.G.'s sworn interview of May 9, 2018.  N.G. was 10 years old at the time of her interview.[156]  When asked why she was present that day, N.G. stated, "I lied and I need to fix it."[157]  N.G. stated that her mother and her grandmother told her the day before that she needed to "fix something" and that she needed to tell the truth.[158]  Both A.C. and C.C. accompanied N.G. to the interview, but they were not present in the room during the interview.[159]  N.G. stated that she lied when she stated that Fontenelle touched her.[160]  She denied anything was going on at the time of her lies and claimed her life to be "perfect."[161]  She could not give a reason for lying other than she was seven years old and "dumb" and "didn't know" was she was thinking.[162]  She explained that she "didn't know what to say" and "stuff just blurted out of [her] mouth."[163]  N.G. claimed she had lied to A.C.'s former boyfriend, Michael Brennan, but could not recall if he asked her anything specific about Fontenelle.[164]  She recalled talking to attorneys, a detective and going to court, and expressed that she did not like

---

[153] *Id.* at 803.
[154] *Id.* at 803-04.
[155] *Id.* at 801-02.
[156] St. R. Vol. 2 of 7, at 249, Sworn Statement of N.G., 5/9/18.
[157] *Id.* at 262.
[158] *Id.* at 263-64.
[159] *Id.* at 246-47, 262
[160] *Id.* at 266.
[161] *Id.* at 267.
[162] *Id.*
[163] *Id.* at 267.
[164] *Id.* at 268-69.

it.[165]  N.G. expressed fear that she would have to go to court again.[166]  She denied anyone asking her to lie in the first place.[167]

N.G. recalled sitting on the couch of her room when she said that Fontenelle came in and touched her from her belly button down.[168]  She claimed Fontenelle did in fact enter her room and sat on her bed, but claimed that, after lying down, he realized she was not her grandmother and he got up and left.[169]  N.G. claimed that she lied when she said that Fontenelle grabbed her by the collar and threatened to hurt her if she told anyone.[170]  N.G. denied anyone else touching her.[171]  When asked a final question as to whether Fontenelle ever touched her in a way that was not a "good touch," N.G. responded, "Nope."[172]

N.G.'s recantation is certainly new.  The actual innocence exception, however, requires that the proffered evidence not only be new, but that it also be reliable.[173]  Moreover, in assessing reliability, it is appropriate for a court to "consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability" of the proffered new evidence.[174]  Those factors weigh against Fontenelle in this case.

N.G.'s recantation made during her statement under oath is highly suspicious.  First, her more recent statement contradicts the statements she made to Deputy Lotz and Detective Tillman, at her Child Advocacy Center and Audrey Hepburn Care Center interviews, and her trial

---

[165] *Id.* at 269-70.

[166] *Id.* at 270.

[167] *Id.* at 271.

[168] *Id.* at 273-74.

[169] *Id.* at 274-75.

[170] *Id.* at 282-84.

[171] *Id.* at 288-90.

[172] *Id.* at 290.

[173] *House v. Bell*, 547 U.S. 518, 537 (2006) ("[T]o be credible a gateway [actual innocence] claim requires new *reliable* evidence . . . ." (emphasis added)).

[174] *Schlup*, 513 U.S. at 332.

testimony.  The timing of her statement, which was made two years after Fontenelle pled guilty to

the offenses and was sentenced to ten years imprisonment, and six months after the Louisiana Fifth

Circuit denied rehearing on his direct appeal, seriously undermines the reliability and credibility

of N.G.'s statement.[175]  N.G.'s statements made just days after the incidents, as well as her trial

testimony, which was consistent with those earlier statements, could be considered by a reasonable

juror to be more accurate and truthful than her recantation.[176]

The trial testimonial evidence that C.C. previously tried to persuade N.G. to recant and the

fact that C.C. accompanied N.G. to the interview on May 9, 2018, also diminishes the reliability

of her recantation.[177]  Further, Fontenelle's familial relationship with N.G., i.e., that he was married

to  C.C.,  further  renders  her  recantation  statement  inherently  suspect.[178]    Additionally,

"[s]kepticism about the truthfulness of such testimony is particularly warranted in familial sexual

abuse cases."[179]  N.G.'s remark, "I don't know if I'm supposed to say it.  But like there was a

couple of times when I was there with my mom only, and he was there," raises a suspicion that

---

[175] *Cf. United States v. Lighty*, 616 F.3d 321, 375 (4th Cir. 2010) ("Post-trial recantations of testimony are 'looked upon with the utmost suspicion.'" (quoting *United States v. Johnson*, 487 F.2d 1278, 1279 (4th Cir. 1973))).

[176] *Arnold v. Richardson*, No. 15-CV-1524, 2020 WL 4569162, at *22 (E.D. Wis. Aug. 7, 2020) (victim's trial testimony could be considered more accurate as it was closer in time to the sexual assaults than his recantation three years after trial), *appeal filed*, 20-2701(7th Cir. Sep. 8, 2020).

[177] *Id.*, at *23-24 (the court detailed "[y]ears of family pressure" which "would likely indicate to a reasonable juror that M.A.'s eventual recantation was not the product of his father's innocence, but of complicated family dynamics.")

[178] *See, e.g., Jones v. Taylor*, 763 F.3d 1242, 1249 (9th Cir. 2014) (recantations from family members reduce their weight and credibility); *Milton v. Secretary, Department of Corrections*, 347 F. App'x 528, 531 (11th Cir. 2009) (finding the reliability of petitioner's affidavits suspect because they were executed by friends or fellow inmates); *Moskios v. Mills*, No. 1:09-cv-00179-CL, 2015 WL 365697, at *10 (D. Or. Jan. 8, 2015) (finding affidavit of victim, who was petitioner's daughter, was less probative than most recantation testimony due to the possibility that she was pressured by petitioner or family members to recant, the long delay, and her failure to affirmatively state her father was not the abuser).

[179] *Emery v. Hobbs*, No. 5:06CV00293 JMM/JTR, 2010 WL 5572401, at *10 (E.D. Ark. Nov. 30, 2010) (citing *United States v. Provost*, 969 F.2d 617, 621 (8th Cir. 1992) (collecting cases)), *R.&R. adopted*, 2011 WL 96994 (E.D. Ark. Jan. 12, 2011).

28

someone coached her before she gave her May 8, 2018 statement.[180]  Her answer to a question whether Fontenelle had spanked her, "I think he gave me one once, but it wasn't hard.  I don't know.  I'm not very sure," suggests that she was attempting to protect him.[181]

Finally, while N.G. denied that anyone had previously asked her to lie, which is consistent with the testimony of Tillman and Troy that the parents did not have enough knowledge to coach N.G. and that there was no signs of coaching, N.G. could not provide any reason why she would have repeatedly lied to law enforcement, medical professionals, investigators, attorneys, and in court.  Nor did she explain how, at the young age of seven, she came up with the allegations. Rather, when this issue was explored by the defense investigator during questioning, N.G. denied that anyone had asked her to lie, and she denied that she had seen anything on television that made her come up with the allegations.[182]  She did not recall whether anyone had asked Fontenelle to leave or if anyone wanted him to move out before she made the allegations.[183]  N.G. simply said she did not remember how she came up with the allegations.[184]

N.G.'s statement under oath raises more questions than answers.  There is no evidence that Child Protective Services was advised that N.G. was going to make a statement under oath recanting her allegations.  N.G. was not provided with counsel or a child advocate during the questioning.  She was not cross-examined.  She was accompanied to the interview by her grandmother, who never believed N.G.'s allegations and had previously tried to influence her to change her allegations.  N.G. did not explain when she first recanted or whom she told.  She did not explain what precipitated her decision to tell someone that she had lied.  Her mother, A.C.,

---

[180] St. R. Vol. 2 of 7, at 276, Sworn Statement of N.G., 5/9/18.
[181] *Id.* at 286.
[182] *Id.* at 271-72.
[183] *Id.* at 279.
[184] *Id.* at 269.

who also accompanied N.G. to the interview, presumably could have provided information as to when N.G. initially recanted and the specifics of that recantation but was not questioned.

In sum, Fontenelle entered a guilty plea. He thereby conceded under oath that he in fact committed and was guilty of the crimes charged. After considering N.G.'s new statement under oath in context with all the evidence presented at the trial prior to Fontenelle's entry of his guilty plea, Fontenelle has not provided evidence sufficiently reliable and persuasive enough to satisfy *Schlup*'s actual innocence gateway standard.

Fontenelle has asserted no other excuse to avoid the expiration of the AEDPA limitations period. His federal petition, deemed filed February 2, 2021, was not timely filed and must be dismissed with prejudice for that reason.

### C.    Exhaustion/Technical Procedural Bar

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."[185] The State alternatively argues that Fontenelle claims are unexhausted and, because they would now be procedurally defaulted in state court, they are also procedurally barred from federal review.[186]

The United States Supreme Court has explained:

The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution. Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of

---

[185] *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation marks omitted).
[186] ECF No. 5, at 11-16.

another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.[187]

"To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."[188]  Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules.[189]  In Louisiana, the highest state court is the Louisiana Supreme Court.[190]

Here, it is beyond dispute that Fontenelle did not present his claims in his direct appeal to the Louisiana Supreme Court.  Nor did he present the claims in his application for post-conviction relief to the Louisiana Supreme Court in a procedurally proper manner.  Because the Louisiana Supreme Court expressly held that his writ application related to the denial of his application for post-conviction relief was untimely, Fontenelle has not "fairly presented" his claims to that court. As a result, the exhaustion requirement has not been met.[191]

Further, as the State notes in its response, Fontenelle's failure to exhaust his claims in state court presents an additional problem and basis for dismissal, i.e. a procedural bar in federal court. If, as is the case here, a "prisoner fail[ed] to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claims are likewise considered defaulted

---

[187] *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (citations, footnote, quotation marks, and brackets omitted).

[188] *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted).

[189] *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

[190] *See* La. Const. art. V, § 5(A).

[191] *See, e.g.*, *Jackson v. Vannoy*, No. 17-00265, 2018 WL 1441154, at *7 (E.D. La. Feb. 27, 2018) ("[Petitioner]'s writ application to the Louisiana Supreme Court was not considered by the Court because it was not timely filed.  It is clear that a claim presented in an untimely writ application has not been 'fairly presented' for exhaustion purposes. . . . Therefore, these . . . claims . . . were not presented to the Louisiana Supreme Court in a procedurally proper manner and cannot be considered to have been exhausted."), *R.&R. adopted*, 2018 WL 1409270 (E.D. La. Mar. 21, 2018).

in federal court.[192]  There is little doubt the state courts would deny any new attempt by Fontenelle

to assert the instant claims as procedurally barred.  If he now tried to file a writ application with

the Louisiana Supreme Court seeking review of the Louisiana Fifth Circuit Court of Appeal's 2017

ruling, that writ application would be dismissed as untimely.[193]  Any new state post-conviction

application attempting to reassert his claims would be both repetitive under LA. CODE CRIM. PROC.

art. 930.4[194] and untimely under LA. CODE CRIM PROC. art. 930.8.[195]  As a result, federal relief is

barred unless he demonstrates either (1) the existence of "cause" for his default and resulting

"prejudice" or (2) that the Court's failure to address the claims would result in a "fundamental

miscarriage of justice."[196]

      "To establish cause for a procedural default, there must be something *external* to the

petitioner, something that cannot fairly be attributed to him."[197]  Fontenelle has not established

cause for his default, and, "[a]bsent a showing of cause, it is not necessary for the court to consider

whether there is actual prejudice."[198]

---

[192] *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (internal quotation marks omitted).

[193] *See* La. S. Ct R. X, § 5(a) (providing that the writ "application shall be made within thirty days of the mailing of the notice of denial of rehearing or the judgment on rehearing," and that no extension of time will be granted). .

[194] In pertinent part, that article provides:

> B. If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court shall deny relief.
> ....
> D. A successive application shall be dismissed if it fails to raise a new or different claim.

LA. CODE CRIM. PROC. art. 930.4.

[195] Article 930.8 generally requires that a petitioner file his post-conviction within two years of the date on which his conviction and sentence became final.  Although there are exceptions provided in the article, those exceptions do not appear to be applicable to Fontenelle's claims.

[196] *See, e.g.*, *Bagwell v. Dretke*, 372 F.3d 748, 756-57 (5th Cir. 2004).

[197] *Johnson v. Puckett*, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted).

[198] *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

Fontenelle likewise has not shown that application of the procedural bar would result in a "fundamental miscarriage of justice." In order to establish a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, Fontenelle must show that, as a factual matter, he did not commit the crime for which he was convicted."[199] However, as already addressed in the discussion of timeliness, Fontenelle has not made a colorable showing of actual innocence.

Accordingly, not only is Fontenelle's federal application untimely, but his underlying claims also fail because they are both unexhausted and procedurally barred.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Fontenelle's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as untimely. Alternatively, the claims are unexhausted and procedurally barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[200]

New Orleans, Louisiana, this 28th day of September, 2021.



DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[199] *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).
[200] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).